## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## ABINGDON DIVISION

| | | |
|---|---|---|
| **AMANDA FRANCIS KINDER,** | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:11cv00079 |
| | ) | **REPORT AND** |
| | ) | **RECOMMENDATION** |
| **MICHAEL J. ASTRUE**, | ) | |
| **Commissioner of Social Security,** | ) | By: Pamela Meade Sargent |
| Defendant | ) | United States Magistrate Judge |

*I.  Background and Standard of Review*

Plaintiff, Amanda Francis Kinder, filed this action challenging the final decision of the Commissioner of Social Security, ("Commissioner"), determining that she was not eligible for supplemental security income, ("SSI"), under the Social Security Act, as amended, ("Act"), 42 U.S.C.A. § 1381 *et seq.* (West 2012). Jurisdiction of this court is pursuant to 42 U.S.C. § 1383(c)(3). This case is before the undersigned magistrate judge by referral pursuant to 28 U.S.C. § 636(b)(1)(B). As directed by the order of referral, the undersigned now submits the following report and recommended disposition.

The court's review in this case is limited to determining if the factual findings of the Commissioner are supported by substantial evidence and were reached through application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence has been defined as "evidence which a reasoning mind would accept as sufficient to support a

Case 1:11-cv-00079-JPJ-PMS   Document 18   Filed 08/15/12   Page 1 of 25   Pageid#: 1455

particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze,* 368 F.2d 640, 642 (4th Cir. 1966). "'If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."'" *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting *Laws*, 368 F.2d at 642).

The record shows that Kinder protectively filed her current application for SSI on October 14, 2003, alleging disability as of April 1, 2003, due to lupus, chronic abdominal pain, sleeping disorder and anxiety attacks.[1] (Record, ("R."), at 16, 77-81, 99, 103.) The claims were denied initially and on reconsideration. (R. 51-53, 56, 57-59.) Kinder then requested a hearing before an administrative law judge, ("ALJ").[2] The hearing was held on January 3, 2006, at which Kinder was represented by counsel. (R. at 434-56.)

By decision dated February 23, 2006, the ALJ denied Kinder's claim. (R. at 16-26.) Kinder then filed an action with this court seeking review of the ALJ's unfavorable decision. By order entered May 22, 2009, the court accepted and approved the Report and Recommendation entered in Kinder's case, vacated the final decision of the Commissioner and remanded the case to the Commissioner for further consideration. (R. at 977-93.) *See Amanda F. Kinder v. Commissioner of*

---

[1] The record shows that Kinder filed her initial application for SSI on October 27, 1999, alleging disability beginning October 1, 1999, based on lupus, right arm pain and numbness in her right leg and arm. (R. at 31-32.) By decision dated April 13, 2001, this claim was denied. (R. at 31-40.) Kinder protectively filed a second SSI application on August 7, 2001, alleging disability as of October 1, 1999, based on systemic lupus, anxiety, depression and anemia. (R. at 73-76, 88.) This claim was denied on November 30, 2001, and the record does not contain documentation indicating that Kinder appealed this decision. (R. at 46-48.)

[2] The request for hearing is not included in the record.

*Social Security*, Case No. 2:08cv00038. Upon remand, the Appeals Council vacated the final decision of the Commissioner and remanded the case for further proceedings. (R. at 1011.) A hearing was held on December 9, 2009, at which Kinder was represented by counsel. (R. at 1331-79.)

By decision dated January 29, 2010, the ALJ denied Kinder's claim. (R. at 966-76.) The ALJ found that Kinder had not engaged in substantial gainful activity since August 10, 2001, the date of her application. (R. at 968.) The ALJ determined that the medical evidence established that Kinder suffered from severe impairments, including systemic lupus erythematosus, right shoulder bursitis, history of gallbladder surgery with abdominal pain, history of liver disease, history of headaches, history of bronchial asthma, coronary artery disease, status post pacemaker and borderline intellectual functioning, but he found that Kinder did not have an impairment or combination of impairments listed at or medically equal to one listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 968, 970.) The ALJ found that Kinder had the residual functional capacity to perform sedentary work[3] that required the performance of no more than simple, unskilled work that did not require following detailed instructions, that did not require her to stand and/or walk more than two hours in an eight-hour workday, that did not require more than occasional climbing, balancing, stooping, kneeling, crouching and crawling, that did not require her to work around excessive exposure to heat or sunlight or concentrated exposure to hazards and respiratory irritants. (R. at 972.) The ALJ

---

[3] Sedentary work involves lifting items weighing up to 10 pounds at a time and occasionally lifting and carrying items like docket files, ledgers and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. *See* 20 C.F.R. § 416.967(a) (2012).

found that Kinder had no past relevant work. (R. at 974.) Based on Kinder's age, education, lack of work experience and residual functional capacity and the testimony of a vocational expert, the ALJ found that Kinder could perform jobs existing in significant numbers in the national economy, including jobs as an order clerk, an office clerk and an information clerk. (R. at 975.) Therefore, the ALJ found that Kinder was not under a disability as defined under the Act and was not eligible for benefits. (R. at 976.) *See* 20 C.F.R. § 416.920(g) (2012).

After the ALJ issued his decision, Kinder pursued her administrative appeals, (R. at 12), but the Appeals Council denied her request for review. (R. at 457-59.) Kinder then filed this action seeking review of the ALJ's unfavorable decision, which now stands as the Commissioner's final decision. *See* 20 C.F.R. § 416.1481 (2012). The case is before this court on Kinder's motion for summary judgment filed April 5, 2012, and the Commissioner's motion for summary judgment filed May 3, 2012.

## II. Facts

Kinder was born in 1976, (R. at 74, 78, 82), which classifies her as a "younger person" under 20 C.F.R. § 416.963(c). She has an eighth-grade education and no past relevant work experience. (R. at 94, 140, 438.)

A medical expert, Dr. H. C. Alexander, M.D.,[4] testified at Kinder's hearing. (R. at 1352-75.) Dr. Alexander stated that, according to the information in the

---

[4] Dr. Alexander is board-certified in internal medicine and rheumatology. (R. at 1352.)

record, it was his medical opinion that Kinder's lupus had been inactive since 2000. (R. at 1355.) Thus, he opined that she did not meet or equal the listed impairment for lupus. (R. at 1355.) Dr. Alexander stated that lupus manifestation of the heart was a vasculitis of a coronary vessel. (R. at 1356.) He stated that it was considered to be one of the main causes of coronary artery disease in young women. (R. at 1356-57.) He stated that there had been no establishment of any coronary artery disease of any etiology in Kinder. (R. at 1357.) He noted that Kinder had been diagnosed with noncardiac atypical chest pain. (R. at 1357.) Dr. Alexander stated that there was nothing in the record to indicate that Kinder met or equaled a listed impairment. (R. at 1359.) Dr. Alexander stated that since April 1, 2003, Kinder had the residual functional capacity to perform a limited range of light[5] work. (R. at 1363.)

Michael Gore, a vocational expert, also was present and testified at Kinder's hearing. (R. at 1375-78.) The ALJ referred Gore to the testimony of vocational expert James Williams, who testified at Kinder's 2006 hearing. (R. at 448-54, 1376.) He asked Gore to consider the same hypothetical individual presented to Williams, but was asked to include additional limitations, such as the individual could not work around concentrated exposure to fumes, odors, chemicals, gases, dust, environmental irritants, moving machinery or unprotected heights. (R. at 1376-77.) Jobs identified by Williams at the light level of exertion were in retail sales and cashier jobs and jobs at the sedentary level included jobs as an order clerk for food and beverage, a general office clerk and an information clerk. (R. at 1376.) Gore stated that these jobs would not be eliminated due to the added

---

[5] Light work involves lifting items weighing up to 20 pounds at a time with frequent lifting or carrying of items weighing up to 10 pounds. If someone can perform light work, she also can perform sedentary work. *See* 20 C.F.R. § 416.967(b) (2012).

- 5 -

limitations. (R. at 1376-77.)  When asked to assume an individual who would only be able to sit, stand and walk for a total of five hours in an eight-hour workday, Gore stated that the individual would not be able to perform a regular full-time workday. (R. at 1377.)

In rendering his decision, the ALJ reviewed records from Tazewell County Public Schools; Tazewell Community Hospital; Wellmont Holston Valley Medical Center; Community Medical Care; Clinch Valley Medical Center; Wellmont Bristol Regional Medical Center; Dr. Syed M. Ahmad, M.D.; Sharon J. Hughson, Ph.D., a clinical psychologist; Bluefield Regional Medical Center; Dr. Donald R. Williams, M.D., a state agency physician; Hugh Tenison, Ph.D., a state agency psychologist; The Clinic; Dr. Vijay R. Phade, M.D.; Dr. Gary Craft, M.D.; Dr. Richard M. Surrusco, M.D., a state agency physician; Joseph Leizer, Ph.D., a state agency psychologist; and Rosedale Community Medical Care. Kinder's attorney also submitted medical records from Community Medical Care, Wellmont Holston Valley Hospital and Clinch Valley Medical Center to the Appeals Council.[6]

The record shows that Dr. Syed M. Ahmad, M.D., treated Kinder from August 2000 through April 2001 for her complaints of minor musculoskeletal aches and pains, systemic lupus erythematosus, ("SLE"), and skin rashes, secondary to SLE.  (R. at 163-66.) Dr. Ahmad found no evidence of active joint swellings or joint deformities. (R. at 163-66.) Dr. Ahmad recommended that

---

[6] Since the Appeals Council considered and incorporated this additional evidence into the record in reaching its decision, (R. at 457-59), this court also must take these new findings into account when determining whether substantial evidence supports the ALJ's findings. *See Wilkins v. Sec'y of Dep't of Health & Human Servs.,* 953 F.2d 93, 96 (4th Cir. 1991).

Kinder avoid excessive exposure to the sun. (R. at 163.) Between May and June 2001, Kinder was hospitalized for treatment of jaundice, abdominal pain, a raised white blood cell count and a low-grade fever. (R. at 167-204.) Dr. Ahmad reported that Kinder did not exhibit signs of an active ongoing lupus disease or acute autoimmune hepatitis. (R. at 182-83.) Dr. Jacob H. Colarian, M.D., diagnosed an acute inflammation of the gallbladder with jaundice, acute hepatitis and malnutrition. (R. at 168.) Dr. Colarian reported that Kinder's anti-DNA and other serological studies were negative and, therefore, he questioned her diagnosis for lupus. (R. at 167-68.) Dr. Colarian noted that, if Kinder had an autoimmune disorder, like lupus, it was "certainly obscure" because all of her serologies were negative. (R. at 167.)

On December 8, 2000, Sharon J. Hughson, Ph.D., a clinical psychologist, evaluated Kinder at the request of Disability Determination Services. (R. at 153-61.) The Wechsler Adult Intelligence Scale-Third Edition, ("WAIS-III"), test was administered, and Kinder obtained a verbal IQ score of 78, a performance IQ score of 76 and a full-scale IQ score of 75. (R. at 156.) Hughson diagnosed dysthymic disorder, borderline intellectual functioning and avoidant personality disorder. (R. at 161.)

On November 16, 2001, Hugh Tenison, Ph.D., a state agency psychologist, indicated that Kinder was moderately limited in her ability to understand, remember and carry out detailed instructions, to maintain attention/concentration for extended periods, to perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances, to work in coordination with or proximity to others without being distracted by them, to complete a normal

workday and work week without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, to interact appropriately with the general public, to ask simple questions or request assistance, to accept instructions and respond appropriately to criticism from supervisors, to get along with co-workers or peers without distracting them or exhibiting behavioral extremes and to set realistic goals or make plans independently of others. (R. at 244-46.)

Tenison also completed a Psychiatric Review Technique form, ("PRTF"), indicating that Kinder suffered from an affective disorder, mental retardation and a personality disorder. (R. at 248-61.) Tenison noted that there was insufficient evidence to determine if Kinder experienced any limitations of activities of daily living. (R. at 258.) He indicated that Kinder had moderate limitations in her ability to maintain social functioning and to maintain concentration, persistence or pace. (R. at 258.) He also indicated that Kinder had not experienced any episodes of decompensation. (R. at 258.) Tenison noted that Kinder "may have moderate limitations in her ability to maintain pace and to interact appropriately with others." (R. at 261.)

On November 12, 2003, Kinder underwent a bone density test at Tazewell Community Hospital, which was normal. (R. at 357-58.) Dr. Mary Anne Smith, M.D., treated Kinder from February 2005 through November 2005 for bursitis of the right shoulder, right upper quadrant pain, status post gallbladder surgery with perforation and probable adhesions, migraine headaches and SLE. (R. at 364-80.) On February 18, 2005, Dr. Smith determined that Kinder's lupus was "quiet." (R. at 376.) On May 6, 2005, Kinder had developed a rash across her face and on both

arms and hands and continued to lose weight. (R. at 372.) Kinder also complained of weakness. (R. at 372.) Dr. Smith increased Kinder's Prednisone dosage. (R. at 372.) Kinder's antinuclear antibody, ("ANA"), screening for SLE was negative. (R. at 373.) On July 26, 2005, Kinder's facial rash still looked mildly inflamed. (R. at 369.) Dr. Smith diagnosed Kinder with a mild flare-up in her SLE. (R. at 369.)

On October 19, 2005, Dr. Smith completed an assessment indicating that Kinder could occasionally lift and carry items weighing up to two pounds and frequently lift and carry items weighing less than one-third of a pound in an eight-hour workday. (R. at 379-80.) She indicated that Kinder could sit a total of three hours in an eight-hour workday and that she could do so for up to 30 minutes without interruption. (R. at 379.) Dr. Smith found that Kinder could stand and/or walk for a total of two hours in an eight-hour workday, but for only 15 minutes without interruption. (R. at 379.) She further noted that Kinder should not stand and/or walk for more than 20 minutes each hour. (R. at 379.) Dr. Smith indicated that Kinder should never climb, stoop, kneel, balance, crouch or crawl. (R. at 380.) She indicated that Kinder was limited in her ability to reach, to handle, to feel, to push and to pull. (R. at 380.) Dr. Smith indicated that Kinder should avoid working around heights, moving machinery, temperature extremes, chemicals, dust, fumes, humidity and vibration. (R. at 380.) Dr. Smith based this assessment on Kinder's diagnosis of lupus. (R. at 379-80.) Dr. Smith noted that the lupus caused Kinder to be fatigued and that would make any type of work schedule unpredictable. (R. at 380.)

On November 15, 2005, Dr. Smith saw Kinder for complaints of numbness of the right side of her face and arm. (R. at 364.) Dr. Smith reported that Kinder

had some limitation in elevation of her right shoulder, and she diagnosed bursitis of the right shoulder. (R. at 364.)

On June 29, 2004, Dr. Gary Craft, M.D., saw Kinder for complaints of lupus, generalized joint pain with marked cramping of the hands and gastrointestinal problems, anxiety-depressive disorder and migraine headaches. (R. at 296-301.) Kinder had full range of motion of the neck and all joints. (R. at 297-98.) Kinder's station and gait were normal. (R. at 298.) Her joints were free of inflammation, and there was no evidence of swelling, redness, heat or deformity. (R. at 298.) Dr. Craft reported that he found no evidence of chronic kidney or liver disease. (R. at 298.) Kinder's lungs were free of respiratory distress, and her gross mental status was intact. (R. at 298-99.) Dr. Craft indicated that Kinder could occasionally lift and carry items weighing up to 20 pounds and frequently lift and carry items weighing up to 10 pounds. (R. at 299.) He indicated that her abilities to sit, stand and walk were unaffected. (R. at 299.) He found no manipulative, postural or environmental limitations. (R. at 299.) Dr. Craft reported that Kinder's long-term prognosis for lupus was poor and that it would be slowly progressive and eventually would be totally incapacitating. (R. at 299.)

On September 29, 2007, Kinder was admitted to Wellmont Holston Valley Medical Center, ("Holston Valley"), with symptoms of weakness, a slow heart rate, hypotension and a complete heart blockage. (R. at 400-33, 1060-74, 1123-25, 1295-1315.) Myocardial infarction was ruled out. (R. at 401.) Her echocardiogram, ("EKG"), revealed trace mitral and tricuspid regurgitation; otherwise, the study was normal. (R. at 1307-08.) A cardiac catheterization revealed normal coronary arteries with normal left ventricular systolic function. (R. at 401.) Dr. James J.

Merrill, M.D., evaluated Kinder and stated that she most likely had cardiac conduction systemic disease due to SLE. (R. at 400-01.) Kinder had an implantation of a permanent dual-chamber pacemaker. (R. at 400, 416-18.) On March 24, 2010, Kinder underwent an exploratory laparotomy with bilateral salpingo-oophorectomy[7] and was found to have bilateral ovarian masses, ascites[8] and a mildly elevated CA-125[9] level. (R. at 594-99.) On June 15, 2010, Kinder was admitted and diagnosed with hepatic encephalopathy,[10] possible lupus, portal vein thrombosis, renal insufficiency, chronic pain syndrome, questionable autoimmune liver disease versus congestive hepatitis and electrolyte abnormalities, including hypokalemia. (R. at 576-93.)

On July 14, 2010, Kinder was admitted to Holston Valley for increased swelling of her legs and abdomen with shortness of breath. (R. at 463-71, 473-76.) A chest x-ray showed mild cardiomegaly.[11] (R. at 473.) An ultrasound of Kinder's abdomen showed ascites and right pleural fluid. (R. at 474.) An EKG showed

---

[7] Salpingo-oophorectomy is defined as surgical removal of an ovary and its fallopian tube. *See* STEDMAN'S MEDICAL DICTIONARY, ("Stedman's"), 735 (1995).

[8] Ascites is defined as the accumulation of serous fluid in the peritoneal cavity. *See* Stedman's at 68.

[9] CA-125 is a protein that is a so-called tumor marker or biomarker, which is a substance that is found in greater concentration in tumor cells than in other cells of the body. In particular, it is present in greater concentration in ovarian cancer cells than in other cells. *See* MEDICINE NET, http://www.medicinenet.com/ca_125/article.htm (last visited Aug. 14, 2012).

[10] Hepatic encephalopathy is a worsening of brain function that occurs when the liver is no longer able to remove toxic substances in the blood. Symptoms can range from mild confusion and poor judgment to abnormal movements or shaking of the hands or arms and coma. *See* MEDLINE PLUS, http://www.nlm.nih.gov/medlineplus/ency/article/000302.htm (last visited Aug. 14, 2012).

[11] Cardiomegaly is defined as an enlargement of the heart. Stedman's at 129.

normal ventricular size and function, a mild left atrial enlargement, a mild mitral regurgitation and posterior effusion without hemodynamic significance. (R. at 475-76.) Kinder was discharged on July 15, 2012, with a diagnosis of atypical angina and dyspnea along with lupus; sick sinus syndrome, status post pacemaker; congestive hepatitis with history of hepatic encephalopathy; renal insufficiency; recurrent ascites; portal vein thrombosis; migraine headaches; asthma; anxiety; depression; history of multiple urinary tract infections; and chronic obstructive pulmonary disease. (R. at 463.)

Kinder was seen at Clinch Valley Medical Center, ("Clinch Valley"), from July 2008 through July 2011 for weakness, malaise, fatigue, chronic joint pain, depression, insomnia, chronic SLE, abdominal pain, dizziness, chronic generalized anxiety disorder, chronic edema, chronic heartburn, chronic portal vein thrombosis, chest pain, shortness of breath, congestive heart failure and chronic myalgias. (R. at 478-575, 635-960, 1075-1293.) In July 2008, Kinder was diagnosed with chest pain, myocardial infarction was ruled out, hypokalemia, lupus, anxiety disorder, hypotension and gastroesophageal reflux disease. (R. at 1082, 1086.) In July 2008, a CT scan and x-rays of Kinder's chest were normal. (R. at 1134-36.) In October 2008, Kinder complained of chest pain, dizziness and lower abdominal pain. (R. at 1141-45.) X-rays of Kinder's chest and abdomen were normal. (R. at 1141-42.) A CT scan of Kinder's brain was normal. (R. at 1145.)

In April 2009, an EKG showed mild mitral regurgitation, trivial tricuspid regurgitation, dyskinesis of the septum, normal left ventricular cavity size and normal left ventricular systolic function. (R. at 1100.) Kinder was diagnosed with atypical chest pain that did not appear to be cardiac in origin. (R. at 1105.)

- 12 -

Throughout 2009, no acute findings were noted with regard to Kinder's complaints of chest pain, with the exception of being diagnosed with pneumonia in February 2009. (R. at 1150, 1153-56, 1158-60.) Throughout 2010, it was noted that Kinder's chronic SLE, chronic joint pain, chronic portal vein thrombosis, depression, anxiety, insomnia and edema were controlled. (R. at 479, 484, 487, 489, 494, 497, 530-34, 547, 551.) On June 12, 2010, Kinder complained of abdominal swelling. (R. at 679-704.) It was noted that Kinder's lupus and autoimmune disease appeared to be attacking both her heart and her liver. (R. at 687.) An abdominal CT scan showed a thrombus in her superior mesenteric vein, as well as a possible portal thrombus. (R. at 687-88.) An ultrasound of Kinder's upper abdomen showed free fluid of moderate amount in the peritoneal cavity, postoperative changes of cholecystectomy and mildly dilated bile ducts at the hepatic duct level, but no focal lesions of the liver were seen, and the liver and spleen were normal in size. (R. at 717.) An ultrasound of Kinder's pelvis showed postoperative changes of hysterectomy and free fluid in the pelvic cavity. (R. at 718.) An EKG showed mild mitral regurgitation, a small pericardial effusion, pericardial fluid in the posterior space, normal left ventricular cavity and normal systolic function. (R. at 724-25.) Kinder was diagnosed with acute exacerbation of lupus; ascites; history of complete heart block, status post pacemaker; superior mesenteric vein venous thrombus with possible nonobstructing portal vein thrombus; urinary tract infection; and hepatitis. (R. at 689-90.)

On January 17, 2011, Kinder presented to the emergency room at Clinch Valley with complaints of shortness of breath, abdominal swelling, weakness, occasional headaches with blurred vision and back, leg and joint pain. (R. at 671-77.) A CT scan of Kinder's abdomen and pelvis showed a "nutmeg" liver, which is

- 13 -

seen in chronic congestive failure, and moderate ascites. (R. at 664-65.) The pelvis CT scan showed moderate ascites and no evidence of bowel obstruction. (R. at 665.) A chest x-ray showed a mildly enlarged cardiac silhouette. (R. at 668.) An EKG showed trace pericardial effusion, moderate mitral regurgitation, left atrial enlargement, concentric left ventricular hypertrophy and normal left ventricular cavity size with normal left ventricular systolic function. (R. at 669-70, 892-93.) Kinder was diagnosed with congestive heart failure, acute or chronic, most likely diastolic dysfunction; mildly elevated cardiac markers, most likely due to congestive heart failure; lupus; ascites; tachycardia; and anxiety disorder. (R. at 673.)

On February 11, 2011, an EKG showed small pericardial effusion without any significant hemodynamic compromise; moderate-to-severe mitral regurgitation; trivial tricuspid regurgitation; and normal left ventricular cavity size with normal left ventricular systolic function. (R. at 661-62.) An x-ray of Kinder's chest showed an enlarged cardiac silhouette. (R. at 663.) On March 10, 2011, Kinder was admitted to Clinch Valley for shortness of breath, cough, fever and chills. (R. at 649-54.) A chest x-ray showed early congestive heart failure with enlarged cardiac size with cephalization of pulmonary blood flow. (R. at 655, 658.) Kinder was discharged on March 14, 2011, with a diagnosis of lingular pneumonia; congestive heart failure, diastolic volume overload; SLE; atrial fibrillation; anxiety disorder; history of complete heart block, status post pacemaker; and noncompliance with treatment regimen. (R. at 649.)

On March 24, 2011, Kinder was admitted to Clinch Valley for shortness of breath with hypoxia and cough. (R. at 642-48.) She was discharged on March 26,

Case 1:11-cv-00079-JPJ-PMS   Document 18   Filed 08/15/12   Page 14 of 25   Pageid#: 1468

2011, with a diagnosis of acute/chronic diastolic congestive heart failure, hypoxia resolved, SLE, atrial fibrillation, history of venous thrombosis, complete heart block, status post pacemaker, anxiety disorder, tobacco abuse and hypokalemia, resolved. (R. at 642.) On April 28, 2011, Kinder was admitted for change in mental status, difficulty in focusing and talking and weakness. (R. at 635-41.) Kinder's air entry was slightly decreased. (R. at 636.) A CT scan of Kinder's head showed some artifact in the right cerebellum, and a cardiovascular accident could not be ruled out. (R. at 636, 640.) An EKG showed a paced rhythm. (R. at 636.) A CT angiography of Kinder's head was normal. (R. at 639.) A chest x-ray showed Kinder's lung volumes were reduced, and there was a crowding of pulmonary vasculature. (R. at 638.) She was diagnosed with altered mental status, SLE, congestive heart failure -- diastolic, atrial fibrillation, pacemaker and hypokalemia. (R. at 637.)

On June 14, 2011, Kinder presented to Clinch Valley emergency room with a history of progressively increasing shortness of breath, orthopnea, paroxysmal nocturnal dyspnea and retrosternal chest pain. (R. at 919-21.) An EKG showed evidence of diastolic dysfunction of the left ventricle, dilated left and right atrium, moderate mitral regurgitation, moderate-to-severe tricuspid regurgitation and small pericardial effusion. (R. at 908-09.) A chest x-ray showed a mildly enlarged cardiac silhouette. (R. at 910.) On June 15, 2011, a CT scan of Kinder's abdomen and pelvis showed suspected developing cirrhosis with early changes consistent with portal hypertension. (R. at 905-06.) Imaging of the liver was that of a "nutmeg" liver secondary to degenerative nodules possibly caused by a component of congestive heart failure. (R. at 905-06.) The heart did not appear to be significantly enlarged, but the inferior vena cava was markedly prominent inferior

- 15 -

to the heart. (R. at 905-06.) The right atrium also was mildly dilated. (R. at 905-06.) The scan of the pelvis showed a narrowing of the colon, which was quite marked and possibly represented a wave of peristalsis or an apple core lesion, as well as massive ascites. (R. at 906.) On June 20, 2011, a CT scan of Kinder's abdomen and pelvis showed a trace of ascites in the abdomen and moderate ascites in the posterior cul-de-sac of the pelvis. (R. at 901-02.) Kinder was discharged on June 23, 2011, with a diagnosis of congestive heart failure with diastolic dysfunction, massive ascites, hypotension, electrolyte imbalance in the form of hypokalemia, chronic atrial fibrillation; and history of SLE. (R. at 924.)

On June 23, 2011, Dr. Vicente Ortiz, M.D., of Clinch Valley reported that Kinder suffered from end-stage liver failure. (R. at 828-29.) Psychiatric examination was positive for anxiety, crying spells, depression, feelings of stress, difficulty concentrating and sadness. (R. at 828.) Kinder had a disheveled appearance and appeared ill and tired. (R. at 829.) Dr. Ortiz diagnosed generalized abdominal pain, SLE, adverse effect from steroids and chronic pain syndrome. (R. at 829.) Dr. Ortiz reported that Kinder's prognosis was poor and that Kinder and her spouse understood this and had made end-of-life care plans. (R. at 829.) On July 21, 2011, Jenny Pruitt, PA-C, reported that Kinder suffered from severe chronic fatigue and pedal edema, generalized arthralgias, chronic back pain and chronic myalgias, which were controlled. (R. at 830.) Examination was positive for anxiety, depression and insomnia. (R. at 830.) Kinder had decreased breath sounds, and a systolic murmur was noted. (R. at 831.)

- 16 -

### III. Analysis

The Commissioner uses a five-step process in evaluating SSI claims. *See* 20 C.F.R. § 416.920 (2012); *see also Heckler v. Campbell*, 461 U.S. 458, 460-62 (1983); *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981). This process requires the Commissioner to consider, in order, whether a claimant 1) is working; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of a listed impairment; 4) can return to her past relevant work; and 5) if not, whether she can perform other work. *See* 20 C.F.R. § 416.920. If the Commissioner finds conclusively that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. *See* 20 C.F.R. § 416.920(a) (2012).

Under this analysis, a claimant has the initial burden of showing that she is unable to return to her past relevant work because of her impairments. Once the claimant establishes a prima facie case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must then establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience and impairments, to perform alternative jobs that exist in the national economy. *See* 42 U.S.C.A. § 1382c(a)(3)(A)-(B) (West 2003 & Supp. 2011); *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983); *Hall*, 658 F.2d at 264-65; *Wilson v. Califano*, 617 F.2d 1050, 1053 (4th Cir. 1980).

Kinder argues that the ALJ failed to give appropriate weight to the opinion of her treating physician, Dr. Smith. (Plaintiff's Brief In Support Of Motion For Summary Judgment, ("Plaintiff's Brief"), at 13-15.) Additionally, Kinder argues that the ALJ failed to address the mental limitations noted by the state agency

psychologist. (Plaintiff's Brief at 15-17.) Kinder also argues that the ALJ erred by failing to find that she did not meet the listing for systemic lupus erythematosus found at 20 C.F.R. Part 404, Subpart P, Appendix 1, §§ 14.02(A) and (B). (Plaintiff's Brief at 17-24.)

As stated above, the court's function in this case is limited to determining whether substantial evidence exists in the record to support the ALJ's findings. The court must not weigh the evidence, as this court lacks authority to substitute its judgment for that of the Commissioner, provided his decision is supported by substantial evidence. *See Hays*, 907 F.2d at 1456. In determining whether substantial evidence supports the Commissioner's decision, the court also must consider whether the ALJ analyzed all of the relevant evidence and whether the ALJ sufficiently explained his findings and his rationale in crediting evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

Thus, it is the ALJ's responsibility to weigh the evidence, including the medical evidence, in order to resolve any conflicts which might appear therein. *See Hays*, 907 F.2d at 1456; *Taylor v. Weinberger*, 528 F.2d 1153, 1156 (4th Cir. 1975). Furthermore, while an ALJ may not reject medical evidence for no reason or for the wrong reason, *see King v. Califano*, 615 F.2d 1018, 1020 (4th Cir. 1980), an ALJ may, under the regulations, assign no or little weight to a medical opinion, even one from a treating source, based on the factors set forth at 20 C.F.R. § 416.927(d), if he sufficiently explains his rationale and if the record supports his findings.

- 18 -

Kinder argues that the ALJ erred by failing to find that she met the listing for SLE found at 20 C.F.R. Part 404, Subpart P, Appendix 1, § 14.02. (Plaintiff's Brief at 17-24.) Based on my review of the record, I agree. The ALJ in this case found that Kinder suffered from severe impairments, including SLE, right shoulder bursitis, history of gallbladder surgery with abdominal pain, history of liver disease, history of headaches, history of bronchial asthma and history of coronary artery disease status post pacemaker. (R. at 968.)

The regulations define SLE as a chronic inflammatory disease that can affect any organ or body system. It is frequently, but not always, accompanied by constitutional symptoms or signs (severe fatigue, fever, malaise, involuntary weight loss). Major organ or body system involvement can include: respiratory (pleuritis, pneumonitis), cardiovascular (endocarditis, myocarditis, pericarditis, vasculitis), renal (glomerulonephritis), hematologic (anemia, leukopenia, thrombocytopenia), skin (photosensitivity), neurologic (seizures), mental (anxiety, fluctuating cognition ("lupus fog"), mood disorders, organic brain syndrome, psychosis), or immune system disorders (inflammatory arthritis). Immunologically, there is an array of circulating serum auto-antibodies and pro- and anti-coagulant proteins that may occur in a highly variable pattern. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 14.00D(1)(a) (2012).

To qualify as disabled under 20 C.F.R. Part 404, Subpart P, Appendix 1, § 14.02, a claimant's condition must meet the following criteria:

A. Involvement of two or more organs/body systems, with:

- 19 -

1. One of the organs/body systems involved to at least a moderate level of severity; and

2. At least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss).

or

B. Repeated manifestations of SLE, with at least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss) and one of the following at the marked level:

1. Limitation of activities of daily living.
2. Limitation in maintaining social functioning.
3. Limitation in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace.

Based on my review of the record, I find that Kinder's SLE meets or equals §14.02(A). In fact, the ALJ's opinion found that Kinder suffered from SLE with severe impairment of her cardiovascular, respiratory and hepatic systems. (R. at 968.) Furthermore, Kinder's cardiac problem was severe enough to require placement of a pacemaker. Thus, her cardiovascular system was involved to at least a moderate severity. The record also demonstrates that Kinder suffered from fatigue and weight loss.

The records of Dr. Smith dated September 2001 through November 2005 show Kinder's ongoing difficulty with SLE, including chronic nausea, chronic abdominal pain, secondary to adhesions in the liver, bilateral leg pain, rashes, secondary to SLE, migraine headaches, chronic diarrhea, shortness of breath, back pain, bilateral shoulder pain, insomnia, low energy level, fatigue, joint and muscle pains, severe weight loss, weakness and chronic cough. (R. at 330-58, 364-77.) On May 6, 2005, Dr. Smith noted that Kinder continued to lose weight, that she had a poor appetite with nausea and vomiting and that she had been feeling extremely

weak with no energy. (R. at 372.)  On June 27, 2005, it was noted that Kinder continued to lose weight. (R. at 371.)

The record also shows that Kinder had multiple admissions for atypical chest pain, congestive heart failure, moderate-to-severe mitral regurgitation and an enlarged heart. (R. at 463, 473, 589, 642, 649, 655, 658, 663, 667-70, 673, 807, 840, 848, 1082, 1086, 1105.)  In September 2007, Kinder had a permanent dual-chamber pacemaker implanted. (R. at 400, 416-18.) She was diagnosed with complete heart block with asystole and ventricular fibrillation arrest, cardiac conduction system disease due to SLE, left arterior fascicular block and intraventricular conduction delay with complete heart block, SLE and migraine headaches. (R. at 400-18.)

In December 2009, Kinder was diagnosed with atypical chest pain, question of possible lupus associated with serositis/pleurisy, lupus erythematosus, right shoulder pain, history of ventricular tachycardia, chronic obstructive pulmonary disease, chronic polyarthralgias, hypokalemia, anxiety disorder and migraine headaches. (R. at 813-15.) In June 2010, Kinder was admitted to Clinch Valley due to abdominal pain and swelling. (R. at 687-88.) She was diagnosed with acute exacerbation of lupus, ascites, superior mesenteric vein venous thrombus with possible nonobstructing portal vein thrombus, urinary tract infection and hepatitis. (R. at 689-90.)  It was noted that lupus and autoimmune disease appeared to be attacking both Kinder's heart and her liver. (R. at 687.) Again, in July 2010, Kinder was admitted for shortness of breath and abdominal and leg swelling. (R. at 465-67.) She was diagnosed with atypical angina and dyspnea, along with lupus, sick sinus syndrome, status post pacemaker, congestive hepatitis with history of

hepatic encephalopathy, renal insufficiency, recurrent ascites, portal vein thrombosis, migraine headache, asthma and chronic obstructive pulmonary disorder. (R. at 463-64.) The record also shows that Kinder suffered from chronic obstructive pulmonary disease, asthma, shortness of breath and lingular pneumonia. (R. at 463, 489, 494, 520, 545, 638, 644, 649, 671.)

In January 2011, a CT scan of Kinder's abdomen noted a "nutmeg" liver, which is seen in chronic congestive heart failure, as well as moderate ascites, and a CT scan of the pelvis showed moderate ascites. (R. at 664-68.) Kinder required hospitalization in March 2011 due to increasing dyspnea, cough, fever and chills. (R. at 651-54.) Chest x-rays showed early congestive heart failure with enlarged cardiac size. (R. at 655, 658.) She was diagnosed with lingular pneumonia, congestive heart failure -- diastolic with volume overload, SLE, atrial fibrillation, anxiety disorder and history of complete heart block. (R. at 649.) In April 2011, Kinder was admitted for change in mental status. (R. at 635-37.) A CT scan of her head showed some artifact in the right cerebellum, and a cardiovascular accident could not be ruled out. (R. at 636.) A chest x-ray showed Kinder's lung volumes were reduced, as well as crowding of the pulmonary vasculature. (R. at 638.) In June 2011, Kinder was admitted and diagnosed with congestive heart failure with diastolic dysfunction, massive ascites, hypotension, electrolyte imbalance in the form of hypokalemia, chronic atrial fibrillation and history of SLE. (R. at 923-24.) Kinder's prognosis was deemed poor, and it was noted that Kinder and her husband had made end-of-life care plans. (R. at 829.)

The only evidence the ALJ cited to support his finding that Kinder's condition did not meet or equal the listed impairment for SLE was the opinion of

the state agency physicians and the hearing testimony of Dr. Alexander. (R. at 970, 974.) Based on my review of the record, I can find no state agency physician's opinion stating that Kinder's condition did not meet the listed impairment for SLE. While Dr. Alexander testified that Kinder's condition did not meet the listed impairment, he also testified that, in his opinion, Kinder did not have lupus. (R. at 1355-56.) The ALJ necessarily rejected Dr. Alexander's opinion, at least in part, because he found that Kinder did suffer from lupus and that her lupus was a severe impairment. That being the case, Dr. Alexander's opinion cannot serve as substantial evidence to support the ALJ's finding on this issue. As stated above, without Dr. Alexander's opinion, the other uncontradicted evidence of record shows that Kinder had SLE which involved two or more organs/body systems, one to at least a moderate level of severity with fatigue and involuntary weight loss. It is not necessary that any one physician actually opine that a claimant's condition meets a listed impairment if the uncontradicted medical record as a whole establishes it.

For all of the above reasons, I find that substantial evidence does not support the ALJ's finding that Kinder's condition did not meet or equal the requirements for the listed impairment for SLE found at 20 C.F.R. Part 404, Subpart P, Appendix 1, § 14.02(A). The regulations provide that, when medical findings are found to be at least equal in severity and duration to a listed impairment, the Commissioner will determine that a claimant's impairment is medically equivalent to the listing. *See* 20 C.F.R. § 416.926(a). Based on this finding, I will not address Kinder's remaining arguments.

- 23 -

## PROPOSED FINDINGS OF FACT

As supplemented by the above summary and analysis, the undersigned now submits the following formal findings, conclusions and recommendations:

1. Substantial evidence does not exist in the record to support the ALJ's finding that Kinder did not meet or equal the listing for § 14.02(A); and

2. Substantial evidence does not exist in the record to support the ALJ's finding that Kinder was not disabled under the Act and was not entitled to SSI benefits.

## RECOMMENDED DISPOSITION

The undersigned recommends that the court grant Kinder's motion for summary judgment, deny the Commissioner's motion for summary judgment, vacate the Commissioner's decision denying benefits and remand this case for an award of benefits.

## Notice to Parties

Notice is hereby given to the parties of the provisions of 28 U.S.C.A. § 636(b)(1)(C) (West 2006 & Supp. 2012):

Within fourteen days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the

findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file timely written objections to these proposed findings and recommendations within 14 days could waive appellate review. At the conclusion of the 14-day period, the Clerk is directed to transmit the record in this matter to the Honorable James P. Jones, United States District Judge.

The Clerk is directed to send certified copies of this Report and Recommendation to all counsel of record at this time.

DATED:     August 14, 2012.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE

-25-