IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ABINGDON DIVISION

| | | |
|---|---|---|
| **AMANDA FRANCIS KINDER,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:11CV00079 |
| | ) | |
| v. | ) | **OPINION** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | By:  James P. Jones |
| **COMMISSIONER** | ) | United States District Judge |
| **OF SOCIAL SECURITY,** | ) | |
| | ) | |
| Defendant. | ) | |

*Joseph E. Wolfe, Wolfe, Williams, Rutherford & Reynolds, Norton, Virginia, for Plaintiff;  Nora R. Koch, Acting Regional Chief Counsel, Region III, Lori Karimoto, Assistant Regional Counsel, and Alexander L. Cristaudo, Special Assistant United States Attorney, Office of the General Counsel, Social Security Administration, Philadelphia, Pennsylvania, for Defendant.*

In this social security case, I deny the objections of the Commissioner to the report and recommendation of the magistrate judge and remand the case for an award of benefits.

I

In this case, Amanda Francis Kinder challenges the final decision of the Commissioner of Social Security ("Commissioner") denying her claim for supplemental security income benefits ("SSI") under Title XVI of the Social

Security Act ("Act"), 42 U.S.C.A. §§ 1381-1383f (West 2012).[1]  Both parties moved for summary judgment.  The action was referred to the magistrate judge, who filed her report recommending that the Commissioner's decision be vacated and the case remanded for an award of benefits.  *Kinder v. Astrue*, No. 1:11cv00079, 2012 WL 3542431 (Aug. 14, 2012) (Sargent, J.).  The Commissioner filed timely written objections to the report.  The plaintiff did not file a response and the objections are ripe for decision.

I must make a de novo determination of those portions of the magistrate judge's report to which the Commissioner objects.  *See* 28 U.S.C.A. § 636(b)(1)(C) (West 2012); Fed. R. Civ. P. 72(b)(3).  Under the Act, I must uphold the factual findings and final decision of the Commissioner if they are supported by substantial evidence and were reached through application of the correct legal standard.  *See Coffman v. Bowen,* 829 F.2d 514, 517 (4th Cir. 1987).

---

[1] This case has a long procedural history.  Kinder previously filed applications for SSI in 1999 and 2001, both of which were denied.  Kinder filed her current application for SSI on October 14, 2003, alleging disability as of April 1, 2003.  Her claim was denied initially and on reconsideration.  A hearing was held before an ALJ on January 3, 2006, and following the hearing, her claim was again denied.  Kinder appealed to this court, and I referred the case to a magistrate judge, who issued a report and recommendation.  *Kinder v. Astrue*, No. 2:08cv00038, 2009 WL 1139362 (W.D. Va. Apr. 28, 2009).  I accepted and approved the report and recommendation, vacated the Commissioner's decision, and remanded Kinder's case to the Commissioner for consideration of new evidence.  *Kinder v. Comm'r of Soc. Sec.*, No. 2:08CV00038, 2009 WL 1451636 (W.D. Va. May 22, 2009). Another hearing was held but Kinder's claim was again denied.

II

Because the magistrate judge's opinion included a detailed recitation of the facts, I will provide only a short summary here.  Kinder is currently 36 years old, making her a younger individual under the regulations.  *See* 20 C.F.R. § 404.1563(c) (2012).  She has an eighth grade education and no past work experience.

The record indicates that Kinder was initially diagnosed with systemic lupus erythematosus ("SLE" or "lupus") in 1999.  Her diagnosis was based on a skin rash, which is a common symptom of lupus, and a skin biopsy.  At one point, an antinuclear antibody ("ANA") test was positive for lupus, but at other points, both ANA and anti-DNA tests were negative.  As a result, some of Kinder's treating physicians questioned whether Kinder actually had active, ongoing lupus.

Kinder exhibited a lupus rash on a number of occasions throughout the period in question.  She regularly complained of joint pain, weakness, malaise, and fatigue, and she often experienced involuntary weight loss. She also suffered from a number of other health issues, including chronic congestive heart failure, possible lupus hepatitis and other hepatic (liver-related) problems, gall bladder removal, removal of her ovaries and fallopian tubes, anxiety and depression, ascites,[2] abdominal pain, chest pain, mitral and tricuspal regurgitation, occasional

---

[2] Ascites is the accumulation of serous fluid in the perinatal cavity.

enlargement of her heart and liver, shortness of breath, an inability to focus and talk that may have been attributable to liver dysfunction, portal vein thrombosis, swelling in her extremities, migraine headaches, chronic obstructive pulmonary disease, and atrial fibrillation.  In 2007, Kinder experienced a complete heart block and had to be resuscitated from a "code blue," which led to the implantation of a pacemaker.  In 2011, she was diagnosed with end stage liver failure and given a poor prognosis.

Throughout her treatment, a number of treating physicians opined that Kinder's heart and liver problems, as well as her joint pain, fatigue, and other symptoms, were caused by lupus.  At various points, however, some of her physicians also indicated that her SLE was controlled.

An independent medical expert, H. C. Alexander, M.D., testified before the ALJ on December 9, 2009.[3]  Dr. Alexander reviewed all of the medical evidence that was before the ALJ.[4]  Dr. Alexander was unconvinced that Kinder had been properly diagnosed with lupus, but he concluded that if she did indeed have lupus, it had been inactive since 2000.  Dr. Alexander conceded that lupus can cause heart problems, but stated that it would not cause the particular kinds of heart problems

---

[3]   Much of Dr. Alexander's testimony was inaudible on the recording of the hearing; thus, the transcript of his testimony contains many gaps.

[4]   Some evidence, however, was submitted to the Appeals Council after the ALJ issued his decision on January 29, 2010.  Dr. Alexander did not have the benefit of reviewing records created after the date of the hearing, such as those generated as a result of hospital visits throughout 2010 and 2011.

from which Kinder suffered. Dr. Alexander saw no evidence in the record that Kinder's pacemaker was malfunctioning or that she had any symptoms related to her heart condition following the implantation of the pacemaker. He indicated that lupus is not the only condition that can result in a positive ANA. When asked about the skin rash that is typically a sign of lupus, Dr. Alexander stated, with little explanation, that he did not believe the rash was evidence of lupus in Kinder's case. Dr. Alexander opined that Kinder's liver problems had been caused not by lupus, but by her gall bladder issues. According to Dr. Alexander, the liver is very rarely involved in lupus. Dr. Alexander suspected that Kinder's joint pain and fatigue may have been caused not by lupus, but by fibromyalgia. Dr. Alexander stated that "there's no objective support for lupus as a cause of Ms. Kinder's problems, even though her treating physicians [thought] that lupus was the cause." (R. at 1370). Essentially, Dr. Alexander's theory was that one family doctor erroneously diagnosed Kinder with lupus in 1999, and from that point forward, every other doctor assumed she had lupus based on that initial diagnosis. Dr. Alexander concluded Kinder did not meet the listed impairment for SLE.

III

The issue in the case is whether substantial evidence supported the Commissioner's determination that the plaintiff did not meet the requirements of the listed impairment for SLE. In determining whether substantial evidence supports the Commissioner's decision, I must consider the record as a whole. *Meyer v. Astrue*, 662 F.3d 700, 704 (4th Cir. 2011). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB,* 305 U.S. 197, 229 (1938)). "It consists of more than a mere scintilla of evidence, but may be somewhat less than a preponderance." *Laws v. Celebrezze,* 368 F.2d 640, 642 (4th Cir. 1966).

If a claimant meets or equals a listed impairment under the Social Security regulations, the claimant is conclusively presumed to be disabled. *Bowen v. Yuckert*, 482 U.S. 137, 141 (1987). The regulations describe SLE as follows:

> Systemic lupus erythematosus (SLE) is a chronic inflammatory disease that can affect any organ or body system. It is frequently, but not always, accompanied by constitutional symptoms or signs (severe fatigue, fever, malaise, involuntary weight loss). Major organ or body system involvement can include: Respiratory (pleuritis, pneumonitis), cardiovascular (endocarditis, myocarditis, pericarditis, vasculitis), renal (glomerulonephritis), hematologic (anemia, leukopenia, thrombocytopenia), skin (photosensitivity), neurologic (seizures), mental (anxiety, fluctuating cognition ("lupus fog"), mood disorders, organic brain syndrome, psychosis), or immune system disorders (inflammatory arthritis). Immunologically, there is an array of

> circulating serum auto-antibodies and pro- and anti-coagulant proteins that may occur in a highly variable pattern.

20 C.F.R. pt. 404, subpt. P, app. 1, §14.00(D)(1)(a) (2012).  A claimant's SLE meets the listed impairment when the following criteria are present:

> A. Involvement of two or more organs/body systems, with:
>
> 1. One of the organs/body systems involved to at least a moderate level of severity; and
>
> 2. At least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss).
>
> or
>
> B. Repeated manifestations of SLE, with at least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss) and one of the following at the marked level:
>
> 1. Limitation of activities of daily living;
>
> 2. Limitation in maintaining social functioning;
>
> 3. Limitation in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace.

20 C.F.R. pt. 404, subpt. P, app. 1, §14.02 (2012).

The magistrate judge determined that the ALJ had erred in finding that the plaintiff failed to meet the criteria of § 14.02(A).  The magistrate judge noted that the ALJ's decision contained contradictory findings.  The ALJ had expressly found that Kinder suffered from SLE with severe impairment of her cardiovascular, respiratory, and hepatic systems, but the ALJ's decision regarding the listed

– 7 –

impairment purported to rely on the opinion of an expert who concluded that Kinder did not have lupus.  According to the magistrate judge, the record demonstrated involvement of Kinder's cardiovascular, respiratory, and hepatic systems.  Kinder's cardiovascular system was involved to at least a moderate severity, as Kinder required the placement of an artificial pacemaker.  The magistrate judge further found that the record demonstrated that Kinder suffered from severe fatigue and involuntary weight loss.  Because the magistrate judge found that Kinder's SLE met the listed impairment in § 14.02, the magistrate judge recommended that I find Kinder disabled and remand the case to the ALJ for an award of benefits.

In his objections, the Commissioner argues that the ALJ's decision should be upheld because it was supported by the opinion of an independent medical expert who reviewed all of the medical evidence that had been before the ALJ. The Commissioner also argues that the magistrate judge should not have considered any evidence of examinations or incidents that occurred after the January 2010 decision of the ALJ, as such evidence was not properly part of the record.

The Appeals Council, and this court, must consider new and material evidence submitted after the ALJ's decision that is relevant to the period on or before the date of the ALJ's decision.  20 C.F.R. § 416.1470(b) (2012); *see Wilkins*

*v. Sec'y of Dep't of Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991) (holding that where Appeals Council considers additional evidence and incorporates it into the record, reviewing court must also consider the new evidence as part of the record.).  Medical records created after the ALJ's decision may be relevant to the period before the ALJ's decision, particularly where, as in this case, the claimant has long suffered from a chronic and progressive disease.  Physical ailments noted after the ALJ's decision may very well have existed or begun to develop before the date of the ALJ's decision.  Thus, because medical records created after the ALJ's decision shed light on Kinder's condition prior to the decision, the magistrate judge did not err in considering those records.

The ALJ's conclusion that Kinder did not meet the listed impairment for SLE was based almost entirely on Dr. Alexander's expert testimony.[5]  The opinion of a treating physician is generally afforded greater weight than the opinion of a non-treating physician.  *See* 20 C.F.R. § 416.927(c) (2012).  In this case, the record contains notes from numerous treating physicians.  The only expert testimony at the hearing, however, came from Dr. Alexander, who never treated or examined Kinder.  "[T]he testimony of a non-examining, non-treating physician should be discounted and is not substantial evidence when totally contradicted by other

---

[5] The ALJ's decision also indicates that he considered the conclusions of Disability Determination Service expert medical consultants that Kinder did not meet any listed impairment. My review of the record, however, revealed no opinion of such a consultant that Kinder did not meet the criteria for §14.02.

evidence in the record." *Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984). Nevertheless, such testimony can be relied upon when it is consistent with the other evidence in the record. *Id.* Where multiple treating physicians testify and disagree with one another, an ALJ's decision to accept the conclusions of a non-treating physician should stand. *Id.*

In this case, several of Kinder's treating physicians indicated in their notes that they questioned whether Kinder had lupus. But these assessments occurred in 2001, prior to the alleged onset date of April 3, 2003. Though some treating medical professionals concluded on later dates that Kinder's lupus was controlled, they all apparently believed that she did, indeed, have SLE. Thus, Dr. Alexander's testimony contradicted the record opinions of all of the treating physicians who saw Kinder after the alleged onset date. Tellingly, even the ALJ found that Kinder had severe SLE. The ALJ's finding thus indicates that he did not find Dr. Alexander's testimony to be fully credible.

Furthermore, medical records from 2011 and 2012 confirm earlier diagnoses of SLE. As Kinder's condition worsened, the medical records imply that the diagnosis of lupus became more concrete. A number of treating physicians concluded that Kinder's lupus was causing her heart and liver problems, among other issues. The ALJ expressly found that Kinder suffered from severe impairment of her cardiac, respiratory, and hepatic systems, though he apparently

did not believe that these impairments were caused by lupus. Indeed, Kinder's cardiac condition was severe enough to cause a "code blue" and require placement of a pacemaker, which certainly amounts to at least moderate severity. Although Kinder's condition fluctuated throughout the time period in question, the record unquestionably reveals that at least at certain points, her heart and liver were involved to a moderate level of severity. Furthermore, the record indisputably shows that Kinder was consistently diagnosed with anxiety disorder, showing possible mental involvement, and she repeatedly presented with a lupus rash, showing skin involvement. Additionally, there is no evidence whatsoever that calls into doubt Kinder's claims of severe fatigue and malaise, and the record indicates that she experienced significant involuntary weight loss on several occasions during the period in question.

The regulations provide that when a claimant's impairments are "at least equal in severity and duration to the criteria of any listed impairment," the claimant's impairments are equal to the listed impairment. 20 C.F.R. § 416.926 (2012). Even if the ALJ was not convinced that Kinder's severe cardiac, hepatic, and respiratory impairments were caused by her lupus, these impairments are clearly equal in severity and duration to the criteria listed in § 14.02. A reasonable person, reviewing all of the record evidence, would not find adequate support for the conclusion that Kinder did not meet or equal the requirements of the listed

impairment for SLE.

## IV

Based on my review of the record as a whole, I find there is not substantial evidence to support the Commissioner's conclusion that Kinder failed to meet the criteria of § 14.02(A).  I hold that the Commissioner erred in finding that Kinder was not disabled and not entitled to SSI benefits.  Therefore, I remand the case to the Commissioner for an award of benefits.  An appropriate final judgment will be entered.

DATED:   October 11, 2012

/s/  JAMES P. JONES
United States District Judge